

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
04/08/2019

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 17-31109 |
| **ALL-TEX STAFFING &** | § | |
| **PERSONNEL, INC.,** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| **ALL-TEX STAFFING &** | § | |
| **PERSONNEL, INC.,** | § | |
| | § | |
| Plaintiff, | § | **Adversary No. 17-03210** |
| | § | |
| v. | § | |
| | § | |
| **SARAH ROMO TORRES,** | § | |
| **MOMENTUM STAFFING** | § | |
| **SOLUTIONS, LLC, AND SYLVIA** | § | |
| **ROMO,** | § | |
| | § | |
| Defendants. | | |

**MEMORANDUM OPINION REGARDING THE DEBTOR'S**
**MOTION FOR RELIEF FROM JUDGMENT**
**[Adv. Doc. No. 115]**

## I. INTRODUCTION

On February 6 and 11, 2019, this Court held a hearing (the "Hearing") on the motion for

relief from judgment (the "Motion") filed by All-Tex Staffing & Personnel, Inc. (the "Debtor").

[Adv. Doc. No. 115]. There was opposition to the Motion. Specifically, Sarah Romo Torres

("Torres") filed an objection and motion to strike the Motion. [Adv. Doc. No. 118]. Additionally,

an objection and motion to strike was filed by Momentum Staffing Solutions, LLC ("Momentum

Staffing") and Sylvia Romo ("Romo"). [Adv. Doc. No. 116].[1] Only one witness, Archie Patterson

---

[1] Torres, Romo, and Momentum Staffing will be collectively referred to as the "Defendants." The objections filed by the Defendants will collectively be referred to as the "Objections."

("Patterson"), the Debtor's owner and president, testified at the Hearing.  The Court admitted

Exhibits A, C, D, E2 (pages 1–6 only), F, G, K, L, and M offered by the Debtor.  After listening

to the testimony, reviewing the exhibits, and hearing closing arguments, the Court took this matter

under advisement.

Pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014, the Court now issues

these Findings of Fact and Conclusions of Law to explain why it has decided to deny the Motion.

To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as

such; and to the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted

as such.  The Court reserves the right to make additional findings and conclusions as it deems

appropriate.

## II.   FINDINGS OF FACT

1.      The Debtor is in the business of providing temporary labor services to customers in

the Houston metropolitan area.  [*See* Adv. Doc. No. 1-1  at 8 of 60].  On or about November 8,

2016, the Debtor filed a lawsuit against Torres styled *All-Tex Staffing & Personnel Inc. v. Sarah

Romo [Torres]*, Cause No. 2016-77306, in the District Court of the 281st Judicial District in Harris

County, Texas (the "State Court Lawsuit").  [*See* Adv. Doc. No. 1-1  at 1 of 60].[2]  In the State

Court Lawsuit, the Debtor brought the following causes of action against Torres, a former

employee:  breach of contract, misappropriation of trade secrets, tortious interference of contracts

and business relationships, unfair competition, breach of computer security crimes, breach of

fiduciary duty, conversion, breach of the Texas Theft Liability Act, and conspiracy.  [Adv. Doc.

No. 1-1, at 45–60 of 60].  The Debtor alleged that Torres—in violation of the confidentiality, non-

solicitation, and non-compete agreements that she signed while an employee of the Debtor—

---

[2] The Debtor subsequently filed three more amended petitions in the State Court Lawsuit.  [*See* Adv. Doc. No. 1-1 at 1 of 60].

misappropriated the Debtor's trade secrets and other confidential information and solicited the Debtor's customers for a competing business—namely, Momentum Staffing. [*Id.*]. Torres had been an employee of the Debtor from approximately January 2013 to November 2016. [Adv. Doc. No. 31, Apr. 27, 2017, Hrg. Tr. 10:7-10].

2.      On February 26, 2017, the Debtor filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code. [Main Case Doc. No. 1].

3.      On April 11, 2017, the Debtor removed the State Court Lawsuit to this Court, and the Clerk of Court assigned the State Court Lawsuit adversary number 17-03210. [Adv. Doc. No. 1].

4.      On April 25, 2017, the Debtor filed a Corrected Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction and Amended Complaint (the "Amended Complaint").[3]  [Adv. Doc. No. 10].   The Amended Complaint added Momentum Staffing and Romo as defendants.  Romo is Torres' mother.   Romo owns Momentum Staffing, which provides temporary labor services to customers in the Houston area—i.e., Momentum Staffing is in the same business as the Debtor.  The Amended Complaint alleged that Torres had worked for Momentum Staffing since March of 2016, which overlaps with the time period she worked for the Debtor (i.e., Torres worked for the Debtor from January of 2013 to November of 2016).

5.      On April 27, 2017, the Court held a hearing on the Debtor's request for a temporary restraining order contained in the Amended Complaint.   At that hearing, Torres, who was

---

[3] Previously, on April 20, 2017, the Debtor filed an Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction and Amended Complaint. [Adv. Doc. No. 4].  This Court denied that pleading on April 24, 2017, for failure to provide the correct adversary proceeding number. [Adv. Doc. No. 9].  The Debtor's filing of the Amended Complaint was its attempt to remedy the deficiencies the Court noted in its April 24, 2017, order and, besides the title of the pleading, is the exact same document that the Debtor filed on April 20, 2017.

representing herself *pro se*, testified that Momentum Staffing is her mother's (i.e, Romo's) business and that her mother was running Momentum Staffing.[4]   Torres denied providing any advice to anyone with Momentum Staffing, or assisting or working with her mother at Momentum Staffing.[5]   Torres also denied assisting with the formation of Momentum Staffing.[6]   In fact, Torres testified that she has "no tie" to Momentum Staffing.[7]

---

[4] Specifically, Torres testified as follows:

| | |
|---|---|
| Q: | Okay.  What do you know about Momentum Staffing Solutions? |
| A: | Momentum Staffing Solutions is my mother's business. |
| Q: | And who runs that company? |
| A: | She does. |

[Adv. Doc. No. 31, Apr. 27, 2017, Hrg. Tr. 8:10-14].

[5] Torres testified as follows:

| | |
|---|---|
| Q: | Okay.  So have you assisted her or worked with her at all at Momentum Staffing? |
| A: | No.  Like I stated, I've been living in Mexico with my husband, coming back periodically. |
| | . . . |
| Q: | When you say you're not into that business, what you're telling -- let me just go through.  You have done no -- provided no services for Momentum Staffing? |
| A: | No. |
| Q: | You've provided no advice to anybody from Momentum Staffing? |
| A: | No. |

[Adv. Doc. No. 31, Apr. 27, 2017, Hrg. Tr. 8:20-23, 16:10-16].

[6] Torres testified as follows:

| | |
|---|---|
| Q: | Okay.  This is showing that Momentum Staffing was formed and filed with the Secretary of State on May 12th, 2016.  Did you assist in the formation of that company? |
| A: | No, I did not. |

[Adv. Doc. No. 31, Apr. 27, 2017, Hrg. Tr. 9:21-24].

[7] Torres testified as follows:

| | |
|---|---|
| Q: | Did you do any work for that company?  Have you done any work for Momentum Staffing? |

6.      On May 3, 2017, the Court held a continued hearing on the Debtor's request for a temporary restraining order.  At the beginning of the hearing, Torres—who had retained counsel by this point—invoked her right under 18 U.S.C. § 1623 to recant the testimony she gave at the April 27, 2017, hearing.  At the May 3, 2017, hearing—in direct opposition to her prior testimony at the April 27, 2017, hearing—Torres testified that she had assisted her mother (i.e., Romo) with Momentum Staffing.[8]  She also testified that she had periodically helped her brother (who also is employed by Momentum Staffing) with work for Momentum Staffing.[9]  Specifically, Torres testified that she had written "ghost emails" for her brother to at least two entities—i.e., Torres actually composed the emails but the emails were composed in such a way such that the recipients of those emails were to believe that her brother wrote and sent them.[10]  Torres further testified that

---

A:      No, I've been living in Mexico like I stated.  I have no tie to Momentum Staffing.

[Adv. Doc. No. 31, Apr. 27, 2017, Hrg. Tr. 9:25–10:3].

[8] Torres testified as follows:

Q:      How long has Sylvia Romo been in the staffing business?

A:      Since May 2016.

Q:      And since May of 2016, have you assisted Ms. Romo or worked with her at all at Momentum Staffing?

A:      I have assisted.

Q:      So you have worked with her?

A:      Yes.

[Adv. Doc. No. 38, May 3, 2017, Hrg. Tr. 20:23–21:4].

[9] Torres testified as follows:

Q:      Have you done any work for Momentum Staffing?

A:      I did periodically help my brother with handling some things.

[Adv. Doc. No. 38, May 3, 2017, Hrg. Tr. 21:12-14].

[10] Torres testified as follows:

during the time period she was employed by the Debtor, she had told one of the Debtor's clients

(Prefco Distribution) about the staffing company her mother had opened,[11] and she also testified

---

Q:      Now, you said earlier that you provided services for Momentum Staffing.  What kind of services did you provide?

A:      I helped send a couple of emails.  Momentum has a general email that my brother uses so I did draw an email up to one of the clients and I have periodically in the past.

        . . .

Q:      Any other entities that you've sent emails to since November 4, 2016?

A:      Prefco.

Q:      Any others?

A:      Lonestar Heat Treat.

Q:      Any others?

A:      No, the rest have, again, since it was a general email created for Momentum Staffing.

Q:      And were these emails sent from your brother's email account?

A:      Yes.

Q:      So you ghost wrote the emails for your brother.

A:      Yes.

[Adv. Doc. No. 38, May 3, 2017, Hrg. Tr. 29:23–30:3, 37:6-18].

[11] Torres testified as follows:

Q:      . . . During the time you were at All-Tex, especially during the last six months [or] so prior to November of 2016, did you ever direct any clients to go anywhere other than All-Tex including Momentum?

A:      One client.

Q:      And what client was that?

A:      Prefco Distribution and just because that question is kind of broad, I did not direct them to work with Momentum Staffing.  I told them about the staffing company that my mother had opened, but I didn't force them or direct them.

[Adv. Doc. No. 38, May 3, 2017, Hrg. Tr. 22:10-19].

that she had told another client of the Debtor (Lonestar Heat Treat) about Momentum Staffing.[12]

Thus, her testimony from the April 27, 2017, hearing that she had "no tie" to Momentum Staffing

was patently false.  In addition to the testimony just described, Torres also testified at the May 3,

2017, hearing that she had never been employed by Momentum Staffing or received a paycheck

from this entity, but rather that she had received money from her mother, Romo, since the

termination of her employment with the Debtor.[13]  Finally, Torres denied taking any property of

---

[12] Torres testified as follows:

> Q:    Okay.  Is Lonestar Heat Treat a customer of Momentum Staffing?
>
> A:    Yes.
>
> Q:    And that is a company that your brother solicited?
>
> A:    Yes.
>
> Q:    And do you know when that occurred?
>
> A:    Actually, no, no, that's not the truth.  I told Lonestar about Momentum.  I didn't direct them.  He moved forward in the Agreement so I just wanted to make sure I'm very clear, like –
>
> Q:    So you didn't solicit them but you –
>
> A:    No.
>
> Q:    -- informed them of Momentum's existence.
>
> A:    I informed them that my mother had opened up a staffing company, but I did not, like give details.

[Adv. Doc. No. 38, May 3, 2017, Hrg. Tr. 41:21–42:10].

[13] Torres testified as follows:

> Q:    Have you received any compensation from Momentum Staffing?
>
> A:    No, I have not.
>
> Q:    Have you received any money from your mother?
>
> A:    Yes, I have.
>
>           . . .
>
> Q:    Okay.  It's true, isn't it, that you've never been employed by Momentum, correct?

the Debtor with her when her employment there was terminated, including any I-9 forms of the Debtor's employees, and she further testified that the officers and directors of Momentum Staffing are Romo, and no one else.[14]  At the conclusion of the May 3, 2017, hearing the Court continued the hearing to May 30, 2017.[15]

7.      On May 26, 2017, Momentum Staffing and Romo filed an Answer.  [Adv. Doc. No. 41].  Also on May 26, 2017, Torres filed an Answer and a counterclaim for attorneys' fees. [Adv. Doc. No. 42].

8.      On May 30, 2017, Torres filed her First Amended Answer.  [Adv. Doc. No. 44].

---

A:      That's the truth.

Q:      You've never received a paycheck from Momentum, correct?

A:      I have never received a paycheck.  I'm not on their payroll.

[Adv. Doc. No. 38, May 3, 2017, Hrg. Tr. 21:21-25, 73:21–74:2].

[14] Torres testified as follows:

Q:      Who are the officers and directors are at Momentum Staffing.

A:      My mother, Sylvia Romo.

Q:      Anyone else?

A:      No.

        . . .

Q:      When you left All-Tex, did you take any personal property with you such as a personal computer?

A:      No.

Q:      Did you take any I-9 forms of any employees from All-Tex?

A:      Absolutely not.

[Adv. Doc. No. 38, May 3, 2017, Hrg. Tr. 31:12-16, 34:14-19].

[15] Although not relevant to the Court's current findings of fact, the Court notes that a number of other individuals also testified at the hearing held on May 3, 2017.

9.      The Court held the continued hearing on May 30, 2017.  After hearing testimony from two additional witnesses and closing arguments, the Court requested additional briefing from the parties and continued the hearing until June 7, 2017.

10.     At the continued hearing on June 7, 2017, the Court heard additional argument from the parties and then took the matter under advisement.

11.     On June 30, 2017, the Court denied the Debtor's request for a temporary restraining order.  [Adv. Doc. No. 52].  The Court thereafter scheduled trial for February 28, 2018.  [Adv. Doc. No. 64].

12.     On December 18, 2017, counsel for Torres filed a notice of settlement, stating that the parties had reached a resolution of the claims in the adversary proceeding (The agreement which the parties eventually signed, which was admitted as **Exhibit L** at the Hearing, is hereinafter referred to as the "Settlement Agreement").  [Adv. Doc. No. 100].

13.     On February 15, 2018, the Debtor filed a motion to compromise pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Motion to Compromise"), requesting that the Court approve the Settlement Agreement.  [Main Case Doc. No. 63].

14.     On February 23 and March 1, 2018, the Court held hearings on the Motion to Compromise.  At the conclusion of the March 1, 2018, hearing the Court orally granted the Motion to Compromise and orally granted a motion to dismiss the adversary proceeding.  On March 7, 2018, the Court entered an order memorializing its ruling regarding the Motion to Compromise. [Main Case Doc. No. 68].  Attached to the March 7, 2018, order was a copy of the Settlement Agreement, which was deemed to have taken effect on March 1, 2018.  In pertinent part, the following terms comprise the Settlement Agreement:

A. The Defendants were to pay the Debtor a total of $200,000.00; $10,000.00 of which was to be paid within 14 days following the entry of the order approving the Motion to Compromise, with the remaining funds to be paid in a series of four larger lump payments and also 60 smaller monthly payments;

B. The Defendants entered into a non-compete agreement in which they agreed not to solicit or conduct business with 20 named companies that were listed on an attachment to the Settlement Agreement; and

C. The Defendants were required to provide a letter to the Debtor stating that Defendants had agreed not to solicit or conduct business with the 20 named companies, and the Debtor was permitted to share this letter with the 20 named companies.

15.     On March 8, 2018, the parties filed a joint stipulation of dismissal in the adversary proceeding, dismissing all causes of actions brought by the Debtor and stipulating that the adversary proceeding be dismissed with prejudice, [Adv. Doc. No. 108], and on April 11, 2018, this Court entered an order dismissing the adversary proceeding with prejudice.  [Adv. Doc. No. 113].

16.     Sometime during the first week of April of 2018, Patterson discovered that Torres' LinkedIn profile represented that she was the president and CEO of Momentum Staffing, and that she had been in those roles since May[16] of 2016.[17]  Thus, according to her LinkedIn profile, Torres

---

[16] At the Hearing, Patterson initially testified that Torres' LinkedIn profile represents that she had been president and CEO of Momentum Staffing since March of 2016, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 20:3-8]; however, later, while reading from Exhibit L, Patterson testified that Torres' LinkedIn profile represents that she has been president and CEO of Momentum Staffing since May of 2016, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 25:17-19, 29:16-18]. Ultimately, it is a distinction without a difference, as Torres was employed by the Debtor until November of 2016. Stated differently, it appears that Torres was working for both the Debtor and Momentum Staffing in 2016, a circumstance which the Debtor contends violated the employment agreements that Torres had with the Debtor.

[17] Specifically, Patterson testified as follows:

was the president and CEO of Momentum Staffing during the same time—approximately May 2016 to November 2016—that she was employed by the Debtor.   The representation made in Torres' LinkedIn profile directly contradicts the testimony Torres provided at the April 27 and May 3, 2017, hearings; specifically, Torres testified then that the officers and directors of Momentum Staffing were Romo and no one else. [Finding of Fact No. 6]. Even though Patterson learned about this LinkedIn profile during the first week of April of 2018, neither Patterson nor the Debtor's counsel of record made this Court aware of this information nor of the fact that the

---

| Q: | Okay.  Now what happened after that? |
|----|----|
| A: | We went about our business and upon coming across a page called LinkedIn that we currently use and previously have used for recruiting tools for our business, I came across some documents from Momentum Staffing that had Sarah Romo[] [Torres'] name on it. And upon looking at those documents, in or around the first week of April, I believe, I noticed something on her page, her LinkedIn home page that stated that she was – |
|    | . . . |
|    | So upon looking at her home page on the LinkedIn home page, it had stated under Sarah Romo [Torres] and Momentum Staffing Solutions that she had put on there she was the President and CEO of Momentum Staffing Solutions since – I believe, it was March of 2016 until present. |

[Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 19:14-21, 20:3-8].

Later, Patterson testified as follows:

| Q: | When was the first printout from the LinkedIn page? |
|----|----|
| A: | The first part of April. |
| Q: | So you knew about these alleged misrepresentations since April of 2018? |
| A: | Correct. |

[Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 70:9-13].

The Court finds it disingenuous that the Debtor's Post-Hearing Brief asserts that the Debtor did not discover until July of 2018 that Torres' LinkedIn profile represented that she had been president of Momentum since May of 2016, [Adv. Doc. No. 141, ¶¶ 11, 21, 22, & 37], when Patterson himself testified, as shown immediately above, that he first learned of this information in early April of 2018.

LinkedIn representation directly contradicted the testimony that Torres gave at the hearings held on April 27 and May 3, 2017.

17.     On April 24, 2018, the Debtor filed a "Motion to Dismiss Chapter 11 Bankruptcy Case" (the "Motion to Dismiss"). [Main Case Doc. No. 79]. Paragraph four of the Motion to Dismiss represented that "[t]he Debtor has resolved the issues with Sarah Romo [Torres], Momentum Staffing and Sylvia Romo." [*Id.* at 2 of 4, ¶ 4]. The Debtor made this representation despite discovering in the first week of April of 2018 that Torres' LinkedIn profile was representing that she currently was, and had been since May of 2016, the president and CEO of Momentum Staffing. Stated otherwise, the Debtor informed this Court that it no longer had any disputes with Torres despite knowing that her LinkedIn profile directly contradicted her testimony at the hearing in April and May of 2017 that her mother (Romo) was Momentum Staffing's only officer.

18.     Based upon the representations made by the Debtor in the Motion to Dismiss, this Court dismissed the bankruptcy on May 23, 2018. [Main Case Doc. No. 81]. In its dismissal order, the Court also required the Debtor to file its final operating report within 20 days and pay all fees due to the U.S. Trustee within 30 days. [*Id.*].

19.     On June 27, 2018, this Court set a status hearing in the Main Case to address why the Debtor had failed to comply with the Court's order of May 23, 2018—i.e., why the Debtor had not timely filed its final operating report. [Main Case Doc. No. 83]. The status hearing regarding why the Debtor had not timely filed its final operating report was held on July 11, 2018. At the status hearing, Reese Baker ("Baker") (counsel for the Debtor) and Patterson appeared. Baker gave testimony regarding the status of the final operating report. Neither Baker nor Patterson informed the Court about Torres' LinkedIn profile—that Patterson had known about since the first

week of April of 2018—representing that Torres was the president and CEO of Momentum Staffing and had held these positions since 2016. Stated differently, neither Baker nor Patterson informed this Court that they believed that Torres perjured herself at the April 27 and May 3, 2017, hearings when she testified that Momentum Staffing's only officers were her mother, Romo. Also at the status hearing, Christine March from the U.S. Department of Justice represented that, based on operating report filed by the Debtor earlier in the day on July 11, 2018, [*see* Main Case Doc. No. 85], the Debtor owed $8,251.00 in quarterly fees to the Trustee. The Debtor subsequently paid the quarterly fees to the U.S. Trustee, and the Debtor's case was closed on August 3, 2018. [Main Case docket entry of Aug. 3, 2018].

20.     On November 12, 2018, pursuant to Federal Rule of Civil Procedure 60(b)(3),[18] the Debtor filed the Motion, alleging—in direct contrast to her testimony at the April 27 and May 3, 2017, hearings—that Torres asserts that she has been president of Momentum Staffing, as evidenced by her LinkedIn profile, since that company's inception in May of 2016. [Adv. Doc. No. 115]. The Debtor contends that Torres' testimony at the May 3, 2017, hearing greatly influenced the Debtor's willingness to settle and the terms it was willing to accept in settlement, as the Debtor believes that Torres' denial of her involvement with Momentum Staffing increased the difficulty the Debtor faced in proving its claims set forth in the Amended Complaint. The Debtor now requests that the Court (1) vacate its March 7, 2018, order in the Main Case approving the Settlement Agreement; and (2) vacate its April 11, 2018, order in the adversary proceeding that dismissed the adversary proceeding with prejudice. Stated differently, the Debtor wants this Court to invalidate the Settlement Agreement and allow the Debtor to prosecute the claims that it set forth in the Amended Complaint.

---

[18] Hereinafter, any reference to a "Rule" refers to the Federal Rules of Civil Procedure.

21.     On November 30, 2018, the Defendants filed the Objections. [Adv. Doc. Nos. 116, 118]. In the Objections, the Defendants argue that: (1) this Court has no jurisdiction to hear the Motion and it therefore should be stricken; (2) even if this Court has jurisdiction, the Debtor is not entitled to relief under Rule 60(b); and (3) intervening equities exist that require the denial of the Motion.

22.     On December 17, 2018, the Debtor filed a reply in support of the Motion, replying to each of the arguments made in the Objections. [Adv. Doc. Nos. 119, 120].

23.     On February 6, 2019, the Court held the Hearing. Patterson was the only witness. In pertinent part, Patterson testified as follows:

    A.  Patterson learned during the first week of April 2018 that Torres' LinkedIn profile represented that she was currently the president and CEO of Momentum Staffing, and had been in those roles since May of 2016, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 19:14-21, 20:3-8, 25:17-19, 29:16-18, 70:9-13];

    B.  The Debtor has already received approximately $22,000.00 from the Defendants pursuant to the terms of the Settlement Agreement, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 55:13-20];

    C.  Patterson admitted that there was no guarantee that the Debtor would prevail in the litigation against the Defendants, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 60:6-8];

    D.  Patterson admitted that in addition to the Debtor believing that it did not have enough evidence against Torres to be successful in continuing in the lawsuit against her, there were also "other factors" that caused the Debtor to settle with the Defendants, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 61:11–62:6]. These other

factors included, at least in "some part" according to Patterson, the cost involved in continued litigation, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 52:2-5], and that to continue to litigate the issues with the Defendants would be a substantial cost for the bankruptcy estate, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 59:24–60:2]. Further, Patterson admitted that the difficulty of collecting against the Defendants—in the event the Debtor won a money judgment—was a "very strong factor" in entering into the Settlement Agreement, and that the Settlement Agreement provided certainty in payment to the Debtor for its alleged damages, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 60:6-20]. Finally, Patterson admitted that the Debtor recognized the risk that the Defendants might successfully prove that the employment agreement between Torres and the Debtor was unenforceable and that the Debtor could fail in its attempt to prove up substantial damages, and that these were both factors that weighed in favor of the Debtor's decision to settle, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 65:25–66:10];

E.  Patterson admitted that under the terms of the Settlement Agreement, the Debtor benefitted from an immediate recovery, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 67:5-9];

F.  Patterson also admitted that without the Settlement Agreement, the Debtor believed that it did not have any assurance that it would receive any damages from the Defendants, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 67:14-18];

G.  Patterson admitted that after the Settlement Agreement was entered into, the dispute was settled and the Debtor was able to dismiss its bankruptcy, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 68:24–69:2];

H. Patterson admitted that the approval of the Settlement Agreement allowed the Debtor immediate access to funds so that it could move forward to propose a plan of reorganization, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 69:7-25];[19]

I. Patterson admitted that the Settlement Agreement allowed the Debtor "to focus not so much on the courts and more on developing [] business," [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 72:4-6]; and

J. Patterson admitted that the amounts paid by the Defendants pursuant to the Settlement Agreement were critical to the operations of the Debtor at the time that the Debtor entered into the Settlement Agreement, [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 72:11-20, 73:13-17].

24.     After Patterson testified, and this Court heard closing arguments from all counsel, the Court took the matter under advisement.  Counsel requested time to submit briefs, and the Court granted this request.  These briefs were subsequently filed.  The Court has reviewed these briefs and now issues its ruling.

### III.    CREDIBILITY OF WITNESSES

The Court finds that Patterson was a credible witness and, therefore, gives significant weight to his testimony.

---

[19] At the time of the Settlement Agreement, the Debtor intended to file a proposed plan, and therefore needed immediate access to funds in order to facilitate obtaining confirmation of a plan.  However, eventually, after the Settlement Agreement was consummated and the terms took effect, the Debtor decided not to attempt to obtain a confirmed plan but rather to request this Court to dismiss the case—which the Court did.  [*See* Finding of Fact Nos. 17–18].

## IV.   CONCLUSIONS OF LAW

### A.  Jurisdiction

The Court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [of the Bankruptcy Code], or arising in or related to cases under title 11." District Courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts.

The Court rejects the argument in the Objections that it does not have jurisdiction to hear the Motion on the grounds that the Debtor did not first file a motion to reopen this adversary proceeding or the main Chapter 11 case. *In re Malden Mills Indus., Inc.*, 361 B.R. 1, 7 (D. Mass. 2007) ("A case need not be reopened before filing a Rule 60(b) motion . . . ."). Besides there being no requirement that a party file a motion to reopen before filing a motion for relief under Rule 60(b), 11 U.S.C. §§ 105(a) and 350 also provide this Court with the power, *sua sponte*, to reopen a case. *See Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 248 n.10 (3d Cir. 2007) ("[W]e point out that it was within the bankruptcy judge's discretion to reopen the bankruptcy case sua sponte so that matters that have a significant connection with the administration of the case can be addressed.") (internal citation and quotations omitted); *Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 944–45 (9th Cir. 2002) (citing §§ 350(b) and 105(a) as support for the contention that "a bankruptcy court has broad discretion to reopen a case *sua sponte*").

## B. Venue

Venue is proper pursuant to 28 U.S.C. § 1409(a) because the Debtor commenced this adversary proceeding in this Court, which is where the Main Case was pending at the time this adversary proceeding was initiated.

## C. Constitutional Authority

In the wake of the Supreme Court's issuance of *Stern v. Marshall*, 564 U.S. 462 (2011), this Court is required to determine whether it has the constitutional authority to enter a final order in any matter brought before it. In *Stern*, which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." 564 U.S. at 503. The matter at bar has nothing to do with state law; rather, it has everything to do with the integrity of the bankruptcy process and this Court's power to enforce—or vacate—its own orders, especially if the order was procured due to perjured testimony. Accordingly, there is no *Stern* concern here: this Court definitely has the constitutional authority to enter a final order on the Motion.

In the alternative, this Court has the constitutional authority to enter a final order on the Motion because the parties have impliedly consented to adjudication of this matter by this Court. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947 (2015) ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be express. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . ."). Indeed, the Debtor filed the Motion; the Defendants filed the Objections; this Court held an evidentiary hearing; and at no time did any of these parties ever object—in their

pleadings or orally in open court—to this Court's constitutional authority to enter a final order on the Motion. If these circumstances do not constitute implied consent, nothing does.

## D. Federal Rule 60(b)(3) Standard

The Debtor argues that pursuant to Rule 60(b)(3), it should be relieved from the Settlement Agreement and the order dismissing this adversary proceeding because Torres committed perjury when she denied she had any formal role with the Debtor at the hearings held on April 27, 2017, and May 3, 2017, and that such perjury prevented the Debtor from fully and fairly litigating the claims set forth in the Amended Complaint.

Pursuant to Rule of 60(b)(3), "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]"[20] "A party making a Rule 60(b)(3) motion must establish (1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005). "Unlike Rule 60(b)(2), 60(b)(3) does not require that the information withheld be such that it can alter the outcome of the case. Rule 60(b)(3) is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *Id.* The moving party has the burden of proving the misconduct by clear and convincing evidence. *Id.*; *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978). The decision to relieve a party from a final judgment or order is within the sound discretion of the trial court. *Diaz v. Methodist Hosp.*, 46 F.3d 492, 496 (5th Cir. 1995).

---

[20] Federal Rule of Civil Procedure 60 is made applicable to this proceeding by Bankruptcy Rule 9024.

"If unequivocal evidence establishes that a party willfully perjured himself, and thereby prevented the opposition from fully and fairly presenting its case, use of Rule 60(b)(3) to grant the innocent party a new trial *would* be a proper response." *Hernandez v. Results Staffing, Inc.*, 907 F.3d 354, 365 (5th Cir. 2018) (emphasis in original). Likewise, a Rule 60(b)(3) motion may be granted if evidence that affects how a party presents its case was withheld. *Rozier*, 573 F.2d at 1342 (citation omitted) ("Inevitably, information developed in the discovery stages of the case influenced the decision as to which theories would be emphasized at trial. We are left with the firm conviction that disclosure of the Trend Cost Estimate would have made a difference in the way plaintiff's counsel approached the case or prepared for trial, and that Mrs. Rozier was prejudiced by Ford's nondisclosure."). In addition to other courts explicitly finding so, there is Fifth Circuit law to support the notion that a party can challenge a settlement agreement through the filing of a Rule 60(b)(3) motion. *Cal Dive Int'l, Inc. v. Schmidt*, 639 F. App'x 214, 216 (5th Cir. 2016); *see also Bright v. First Senior Fin. Grp.*, No. 12-360, 2013 WL 3196391, at *3 (E.D. Pa. June 24, 2013) (stating that defendants—who brought Rule 60(b)(3) motion to vacate dismissal and settlement agreement based on plaintiff's and other witness's alleged perjury—"must prove that the misrepresentations by Plaintiff and her witnesses caused them to enter the settlement agreement, thereby prohibiting them from fully presenting their case"); *Plant v. Burkquist*, No. 1:10cv-00278-FJL, 2014 WL 3687230, at *2 (D. Idaho July 22, 2014) ("In the context of a settlement agreement, the party making the allegation of fraud must bring forward clear and convincing evidence that the other party acted fraudulently prior to the execution of the Consent Judgment."); *Tweed v. Schuetzle*, No. 1:06-cv-032, 2009 WL 874609, at *3 (D.N.D. Jan 6, 2009) ("Subdivision (3) of Rule 60(b), which is the one relied upon by the plaintiffs in this case, has also been used to provide justification when it is argued that the settlement agreement should be set

20

aside because of fraud.  While the matter is not completely free of doubt, it appears this court has authority under Rule 60(b)(3) to set aside the settlement agreement as well as the judgment of dismissal if plaintiffs have proved fraud.").  Before it considers the merits of the Debtor's Rule 60(b)(3) argument that Torres' alleged misconduct necessitates the voidance of the Settlement Agreement and the reopening of the adversary proceeding, this Court will consider Torres' arguments that:  (1) the Motion is untimely pursuant to Rule 60(c); and (2) judicial estoppel bars the unwinding of the Settlement Agreement and the reopening of the adversary proceeding.

## E.  Timeliness of the Motion Pursuant to Federal Rule of Civil Procedure 60(c)

Federal Rule of Civil Procedure 60(c) requires that a motion brought under Rule 60(b) be made "within a reasonable time."  Further, if the motion is brought pursuant to Rule 60(b)(3), then the motion must be brought "no more than one year after the entry of the judgment or order or the date of the proceeding."  This one-year period is an "outer limit"; stated differently, "[t]he one-year period [enunciated in Rule 60(c)] represents an extreme limit, and the motion will be rejected as untimely if not made within a 'reasonable time,' even though the one-year period has not expired."  *Limon v. Double Eagle Marin, L.L.C.*, 771 F. Supp. 2d 672, 677 (S.D. Tex. 2011) (quoting *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986)).  In fact, the Fifth Circuit and courts in the Southern District of Texas often find that a Rule 60(b) motion was not filed within a "reasonable time," even though it was filed within the one-year period prescribed by Rule 60(c).  *See, e.g.*, *Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (holding that Rule 60(b) motion was not filed within a "reasonable time" when the motion was filed almost eight months after relevant change in law to bring the Rule 60(b) motion); *Limon*, 771 F. Supp. 2d at 677–81 (holding that four-month delay in bringing Rule 60(b) motion was unreasonable).

What constitutes a "reasonable time" is fact sensitive and "takes into account the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Legion Ins. Co. v. Mega Interests Inc.*, 78 F. App'x 945, 946 (2003) (quoting *Travelers Ins. Co. v. Lijeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994)). Further, "[t]he timeliness of the motion is measured as of the point in time when the moving party has grounds to make such a motion, regardless of the time that has elapsed since the entry of judgment." *Edwards v. Davis (In re Edwards)*, 865 F.3d 197, 208 (5th Cir. 2017).

Here, Patterson discovered in the first week of April of 2018 that Torres' LinkedIn profile was representing that she had been the CEO and president of Momentum Staffing since May of 2016. [Finding of Fact Nos. 16, 23]. Thus, the first week of April of 2018 is the starting point as to when the moving party—i.e., the Debtor—had grounds to make a Rule 60(b)(3) motion. The Court now addresses each of the four *Lijeberg* factors of what constitutes a "reasonable time."

1. Interest in Finality

There is no question that setting aside the Settlement Agreement and reopening the adversary proceeding would undermine the finality in this suit. The Fifth Circuit has repeatedly stated that there is a "salutary and sound public policy that litigation should come to an end." *Hardy Rawls Enters. L.L.C. v. Cage (In re Moye)*, 437 F. App'x 338, 341 (5th Cir. 2011) (quoting *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1319 (5th Cir. 1978)). This policy seems particularly appropriate when, as here, the terms of the settlement have been complied with for several months, including the making of periodic payments by Momentum Staffing, totaling approximately $22,000. [*See* Finding of Fact No. 23]. It is no small point that the Debtor, having discovered the LinkedIn profile in the first week of April of 2018 (i.e., before substantial compliance with the Settlement Agreement had occurred), could have immediately brought this

information to the Court's attention and requested the Court to vacate its order approving the Motion to Compromise and not to enter an order dismissing the adversary proceeding with prejudice. [*See* Finding of Fact Nos. 14–15]. Instead, the Debtor decided to lay behind the log for eight months in order to garner the benefit of the Settlement Agreement and only file the Motion when it became economically beneficial to do so. For this Court to now set aside the Settlement Agreement and reopen the adversary proceeding would clearly be contrary to the public policy that "litigation should come to an end." Thus, this factor weighs in favor of this Court finding that the Motion was not filed within a reasonable time.

### 2. The Reason for Delay in Filing the Motion

Here, Patterson provided no reason for the eight-month delay in filing the Motion. When no reason is given for the delay in filing the Rule 60 motion, this weighs against a finding of reasonableness. *See Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006) (noting that appellant "did not attempt to identify any good reason" for the delay in filing his Rule 60(b)(4) motion and then affirming district court's denial of Rule 60(b)(4) motion when motion was filed 11 months after the judgment was entered); *McLawhorn v. John W. Daniel & Co., Inc.*, 924 F.2d 535, 538 (4th Cir. 1991) ("We have held on several occasions that a Rule 60(b) motion is not timely brought when it is made three to four months after the original judgment and no valid reason is given for the delay."); *Fed. Land Bank of St. Louis v. Cupples Bros.*, 889 F.2d 764, 768 (8th Cir. 1989) (affirming district court's denial of a Rule 60(b) motion as untimely where the motion was filed after a ten week delay and the movant offered no adequate explanation for the delay); *Krishnan v. JPMorgan Chase Bank, N.A.*, No. 4:15-CV-00632-RC-KPJ, 2018 WL 7138385, at *3 (E.D. Tex. Dec. 18, 2018) ("Plaintiffs waited approximately seven months to file the Rule 60 Motion . . . . No explanation is provided by Plaintiffs regarding the delay between discovery of the

'evidence' attached to their Rule 60 Motion and its filing.  Plaintiffs did not exercise diligence in filing their Rule 60 Motion within the reasonable time required under the Rule.");  *e-Watch, Inc. v. Mobotix Corp.*, Civil No. SA-12-CA-492-FB, 2014 WL 12493353, at *5–6 (W.D. Tex. Dec. 23, 2014) (denying motion for relief under Rule 60(b) when plaintiff did not provide any reasons for its delay in filing the Rule 60(b) motion and when Rule 60(b) motion was filed two months after entry of judgment).  In fact, a failure to provide justification for a delay in filing is virtually a death knell for any movant seeking Rule 60 relief.  *See, e.g.*, *Hanrique v. Astrue*, 499 F. Supp. 2d 55, 57–58 (D. Mass. 2007) (finding that although the motion was filed within one year of the entry of judgment, the motion was nevertheless not filed in a reasonable time when plaintiff's attorney learned of new information in April of 2007 but did not file a motion to vacate until July of 2007, and failed to explain in the motion why the delay occurred); *Thompson v. Paul*, No. CIV-05-0990-PHX-MHM, 2007 WL 973975, at *2 (D. Ariz. Mar. 30, 2007) (finding that a six-month delay between discovering new evidence and filing the Rule 60 motion was unreasonable when "Plaintiffs fail[ed] to articulate any reason for the near six-month delay"); *Nat'l Capital Mgmt., LLC v. Herman*, No. 6:11-cv-9-ORL-28, 2011 WL 4531736, at *4 (M.D. Fla. Sept. 29, 2011) (concluding that a seven-month delay in seeking relief under Rule 60 and Bankruptcy Rule 9024 was untimely by emphasizing the "fail[ure] to provide any justification for its tardy action").

Further, Patterson has known since the first week of April of 2018 that Torres' LinkedIn profile was representing that she had been the president and CEO of Momentum Staffing since May of 2016.  [Finding of Fact Nos. 16, 23].  When the moving party physically possesses the evidence it considers the underlying reason for the Rule 60(b) motion but then delays in filing the Rule 60(b) motion, this weighs in favor of finding that the delay in filing the Rule 60(b) motion was not reasonable.  *See Parker v. Mich. Nat'l Bank (In re Parker)*, 90 B.R. 857, 864 (Bankr. W.D.

Mich. 1988) (finding that "a delay [of bringing a Rule 60(b) motion] from April to November is not reasonable when the moving party has all the documents in his possession . . . [a] party cannot sit on his evidence and release it to the court in bits and pieces as it pleases him to do so"). Therefore, this factor weighs in favor of this Court finding that the Motion was not filed within a reasonable time.

The Debtor has cited two cases as persuasive authority from other circuits as support that the Motion was filed timely under the reasonableness standard. [Adv. Doc. No. 141, ¶¶ 19 & 20]. However, this Court finds these cases unpersuasive and inapplicable to the circumstances surrounding the Motion. In *Venture Indus. Corp. v. Autoliv ASP, Inc.*, the court noted that the non-movant "makes no colorable claim that it was prejudiced by [the movant's] delay" in filing the Rule 60(b) motion. 457 F.3d 1322, 1328 (Fed. Cir. 2006). Here, the Court finds that there is not only some but quite a significant amount of prejudice to the Defendants. *See infra* Section E.4. Thus, *Venture Indus. Corp.* is easily distinguishable from the Motion presently before the Court. In *Dunlop v. PAN AM*, the court ruled that the appellants, who had filed a *pro se* Rule 60(b) motion after "understandably rel[ying] on repeated assurances by the [U.S.] Secretary [of Labor] that the federal settlement would not bar their state claims," had filed the motion timely because it was within "four months of the N.Y. State Division's dismissal of appellants' state claims." 672 F.2d 1044, 1051 (2d Cir. 1982). The *Dunlop* case could not be more distinguishable from the circumstances surrounding the Motion before the Court. Specifically, the Debtor was, and has been, represented by the same seasoned counsel, both in the main case and this adversary proceeding, since the inception of each proceeding, respectively. [*See* Main Case Doc. No. 1 & Adv. Doc. No. 1]. Unlike the appellants in *Dunlop,* who did not have counsel and were relying on the U.S. Secretary of Labor which investigated and pursued an action under federal employment

laws against the appellants' former employer, the Debtor is not and has not represented itself *pro se* in this Court.[21]  Rather, the Debtor has all along had counsel representing it and could have—and should have—filed the Motion in April of 2018 right after Patterson learned of the information on Torres' LinkedIn profile.  Therefore, the Court finds these cases unpersuasive and wholly inapposite to the circumstances surrounding the Motion.

In sum, the Court finds that the Debtor has not provided any good reason for the delay in filing the Motion and that this factor weighs in favor of this Court finding that the Motion was not filed within a reasonable time.

### 3.  The Practical Ability of the Litigant to Learn Earlier of the Grounds Relied Upon

There was no testimony at the Hearing regarding whether it was possible for Patterson to learn, prior to the first week of April of 2018, that Torres' LinkedIn profile represented that she had been the president and CEO of Momentum Staffing since May of 2016.  Because the Debtor has the burden in prosecuting the Motion, the Court finds that the Debtor has failed to carry this burden.  Patterson needed to give testimony that, as a practical matter, he had no ability to discover the existence of the LinkedIn profile prior to entering into the Settlement Agreement—and such testimony he simply did not give.  Moreover, as discussed above, the Debtor could have (and should have) raised the issue of Torres' LinkedIn profile well before the filing of the Motion in November of 2018 because Patterson was aware of the facts he now relies upon since the first week of April of 2018.  [*See* Finding of Fact Nos. 16, 23].  Further—also as noted above—Patterson has failed to provide the Court with any explanation for the delay.  Under these circumstances, the Court finds that this factor weighs in favor of this Court finding that the Motion was not filed within a reasonable time.

---

[21] In fact, Texas law does not permit a corporation to represent itself in court.  *In re Cash Media Systems, Inc.*, 326 B.R. 655, 673 (Bankr. S.D. Tex. 2005) (citing Texas law).

4.  Prejudice to Other Parties

Here, there is no question that setting aside the Settlement Agreement and reopening the adversary proceeding would prejudice the Defendants.  Momentum Staffing has already paid approximately $22,000 to the Debtor pursuant to the terms of the Settlement Agreement, [Finding of Fact No. 23], and even though Patterson testified that the Debtor could immediately return the $22,000 to Momentum Staffing, if this Court grants the Motion, Momentum Staffing will have been without the benefit of this $22,000 for several months.  Further, also under the terms of the Settlement Agreement, the Defendants agreed (1) not to solicit or conduct any business for a period of 60 months with 20 companies listed in an addendum to the Settlement Agreement; and (2) to provide a letter to the Debtor that it had agreed not to solicit or conduct business with these 20 companies and that the Debtor could share this letter with these companies.  [Finding of Fact No. 14].  For the last 11 months, the Debtor has benefitted from these provisions in the Settlement Agreement and the Defendants have suffered because of these provisions; indeed, the Debtor has been able to solicit the business of these 20 companies without any competition from Momentum Staffing.  To now void the Settlement Agreement would allow the Debtor to have its cake and eat it, too: it will have gotten a huge head start on its competition with respect to business development and yet also be able to prosecute its claims against the Defendants now that it has recovered from its financial woes of a year ago.  Such a result would assuredly prejudice the Defendants, who have been timely abiding by the terms of the Settlement Agreement since the Court approved the Settlement Agreement.  Under these circumstances, the Court finds that this factor weighs in favor of this Court finding that the Motion was not filed within a reasonable time.

5.  Summary of the Rule 60(c) Factors

In sum, in analyzing all four factors, this Court finds that all of them weigh heavily in favor of a finding that the Motion was not filed within a reasonable time. Accordingly, because this Court finds that the Motion was not filed within a reasonable time as required by Rule 60(c)(1), the Court finds that the Motion must be denied.

## F.  Even if the Motion is Timely Pursuant to Rule 60(c), the Motion Should be Denied on Judicial Estoppel Grounds

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011). "It is 'an equitable doctrine invoked by a court at its discretion' to 'protect the integrity of the judicial process.'" *Id.* at 574 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)). "The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, (5th Cir. 1999) (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)). "As an equitable doctrine, '[g]enerally, judicial estoppel is invoked where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (quoting *Superior Crewboats Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 334 (5th Cir. 2004)). Importantly, "judicial estoppel is an equitable doctrine" and "courts may apply it flexibly to achieve substantial justice." *Reed*, 650 F.3d at 576; *see also Johnson v. First Tech. Fed. Credit Union*, No. H-11-3812, 2013 WL 3787447, at *2 (S.D. Tex. July 18, 2013) ("Whether or not judicial estoppel applies is not determined by 'inflexible prerequisites or an exhaustive formula

for determining [its] applicability,' and numerous considerations 'may inform the doctrine's application in specific factual contexts.'") (quoting *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012)).

In the Fifth Circuit, the following three factors govern the application of the judicial estoppel doctrine: "(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent." *Kane*, 535 F.3d at 385–86 (internal quotation and citation omitted). In addition to these three factors, "[t]he court may additionally consider 'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *ASARCO, LLC v. Mont. Res., Inc.*, 514 B.R. 168, 194 (S.D. Tex. 2013) (quoting *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 319 n.10 (5th Cir. 2011)). "In the bankruptcy context, judicial estoppel is applied 'against the backdrop of the bankruptcy system and the ends it seeks to achieve.'" *ASARCO, LLC*, 514 B.R. at 193 (quoting *Reed*, 650 F.3d at 574). "These ends are to bring about an equitable distribution of the bankrupt's estate among creditors holding just demands . . . and to grant a fresh start to the honest but unfortunate debtor." *Reed*, 650 F.3d at 574 (internal citations and quotations omitted). The Court now examines these elements in the dispute at bar.

1.  The Debtor's Position Is Clearly Inconsistent With Its Previous Position

This first element is satisfied. When the Debtor filed its Motion to Dismiss on April 24, 2018, its position was that "[t]he Debtor has resolved the issues with Sarah Romo [Torres], Momentum Staffing and Sylvia Romo." [Finding of Fact No. 17]. And, importantly, the Debtor took this position despite already knowing at the time that Torres' LinkedIn profile represented that she had been president and CEO of Momentum Staffing since May of 2016, which directly

contradicted her testimony from 2017. [*See* Finding of Fact Nos. 5, 6, 16, 17]. Now, however, the Debtor takes the position that it does still have issues with Torres on the grounds that it did not have knowledge about the LinkedIn profile representations when it entered into the Settlement Agreement and therefore should be allowed to prosecute the claims against her that it would have prosecuted if settlement had not been consummated. This current position is clearly inconsistent with the position that the Debtor took on April 24, 2018, when it filed the Motion to Dismiss. [*See* Finding of Fact No. 17]. Indeed, this inconsistency is particularly egregious because at the time the Debtor represented that it had resolved all issues with the Defendants (including Torres), the Debtor knew about Torres' LinkedIn profile which the Debtor now complains contains representations that it could have used to prosecute the claims against her set forth in the Amended Complaint.

### 2. The Court Accepted the Debtor's Previous Position That It Had Resolved All Issues with the Defendants

The second element of judicial estoppel requires that "the court must have accepted the previous position." *Kane*, 535 F.3d at 385–86. Here, this Court accepted the Debtor's statement that it had "resolved the issues with Sarah Romo [Torres], Momentum Staffing and Sylvia Romo," and it relied upon this statement when making the decision to dismiss the Main Case. [*See* Finding of Fact Nos. 17, 18]. In fact, at the Debtor's urging that all matters were resolved with the Defendants, the Court entered an order dismissing the Main Case on May 23, 2018. [*See* Finding of Fact No. 18; Main Case Doc. No. 81].

### 3. The Debtor's Non-Disclosure of Its Discovery of Torres' LinkedIn Profile in Early April 2018 Was Not Inadvertent

Judicial estoppel does not apply if a party acted inadvertently. *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 573 (5th Cir. 2015). The Debtor can establish inadvertence by proving

"either that [it] did know of the inconsistent position or that [it] had no motive to conceal it from the court." *Id.* Specifically, to prove lack of knowledge of the inconsistent position, the Debtor "must show not that [it was] unaware that [it] had a duty to disclose [its] claims but that . . . [it was] unaware of the facts giving rise to them." *Flugence v. Axis Surplus Ins. Co. (In re Flugence)*, 738 F.3d 126, 130 (5th Cir. 2013) (internal citation and quotation omitted). "In other words, the controlling inquiry with respect to inadvertence, is the knowing of facts giving rise to inconsistent positions . . . . [A] lack of awareness of a statutory disclosure duty for [] legal claims is not relevant." *Id.* at 130–31 (internal citation and quotation omitted).

   a. *The Debtor Knew of the Facts Regarding Torres' LinkedIn Profile When the Debtor Filed the Motion to Dismiss*

The Debtor knew of the facts regarding Torres' LinkedIn profile when the Debtor filed the Motion to Dismiss and yet the Motion to Dismiss expressly represented that "[t]he Debtor has resolved the issues with Sarah Romo [Torres], Momentum Staffing and Sylvia Romo." [*See* Finding of Fact Nos. 16, 17]. Specifically, Patterson credibly testified that he first learned about the LinkedIn profile during the first week of April of 2018; whereas, the Debtor filed the Motion to Dismiss in late April of 2018—specifically on April 24, 2018. [Finding of Fact Nos. 16, 17, 23]. In other words, the Debtor knew that Torres' LinkedIn profile was representing that Torres had been the president and CEO of Momentum Staffing since May of 2016 at the same point in time the Debtor was representing to this Court in the Motion to Dismiss that "all issues" had been resolved with Torres. [*See* Finding of Fact Nos. 16, 17, 23]. Thus, as a matter of law, the Debtor did not act inadvertently.

      *b.  The Debtor Had Motive to Conceal the Fact that It Had Discovered Torres'*
      *LinkedIn Profile at the Time the Debtor Filed the Motion to Dismiss*

Additionally, this Court finds that the Debtor had motive to conceal the fact that it had

discovered Torres' LinkedIn profile at the time the Debtor filed the Motion to Dismiss.

First, the Debtor wanted to wrap up all issues in the bankruptcy case so that it could dismiss

the case, one result of which would be that the Debtor would no longer be required to pay quarterly

fees to the U.S. Trustee.[22]  Second, dismissing the bankruptcy case also allowed the Debtor to

avoid the costs of continued litigation,[23] a fact Patterson admitted at the Hearing.  [Finding of Fact

No. 23].  Third, the Settlement Agreement greatly benefitted the Debtor in the short term.  Pursuant

to the terms of the Settlement Agreement, the Defendants were precluded from doing business

with 20 companies, which opened the door for the Debtor to pick up new clients or solidify its

relationships with existing clients who might otherwise have taken their business to Momentum

Staffing.  [Finding of Fact No. 23].  The Defendants were also to pay the Debtor a lump sum of

$10,000.00 within 14 days following the entry of the Settlement Agreement, and have since paid

the Debtor an additional $12,000.00.  [Finding of Fact Nos. 14, 23].  Patterson testified that the

money paid to the Debtor was critical to the Debtor's business during the period of time the Debtor

was still in bankruptcy, as those funds allowed the Debtor to move forward with a Chapter 11 plan

of reorganization at a time when dismissal of the case was not anticipated.[24]  [Finding of Fact No.

---

[22] The Court finds that this is no mean point in this particular case.  Indeed, the last quarterly fee payment that the Debtor had to make was $8,251.00, [Finding of Fact No. 19], and given the Debtor's tight cash flow during this period of time, it was definitely a benefit to the Debtor to have its case dismissed in order to avoid further U.S. Trustee fees.

[23] Such litigation costs would necessarily have included preparing and prosecuting a plan, which could have drawn objections from various creditors, not the least of which was the IRS (with whom the Debtor eventually achieved a settlement).  [Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 75:7-14].

[24] The Debtor ended up not going forward with a plan, but rather seeking a dismissal of the case due to resolving its disputes not only with the Defendants but the IRS.  Thus, the Debtor was able to use the funds it received from the Settlement Agreement for its business operations and development rather than having to spend these funds on obtaining a confirmed plan of reorganization.

23]. Fourth, Patterson testified that there was no guarantee that the Debtor would prevail in litigation against the Defendants, and that under the terms of the Settlement Agreement, the Debtor benefitted from an immediate infusion of cash. [Finding of Fact No. 23]. Fifth, Patterson further testified that in the event the Debtor won a money judgment, the difficulty of collecting against the Defendants was a "very strong factor" in entering into the Settlement Agreement, and that the Settlement Agreement provided certainty in payment to the Debtor for the alleged damages. [Finding of Fact No. 23]. Sixth, without the Settlement Agreement, there was no assurance that the Debtor would recover any damages from the Defendants. [Finding of Fact No. 23]. Seventh, Patterson admitted that the Defendants might successfully prove that the employment agreement between Torres and the Debtor was unenforceable and that the Debtor would therefore fail in its attempt to prove substantial damages, and that both of these factors weighed in favor of the Debtor's decision to enter into the Settlement Agreement. [Finding of Fact No. 23]. Eighth, and finally, the Settlement Agreement allowed the Debtor "to focus not so much on the courts" and instead to turn its attention to developing business. [Finding of Fact No. 23]. Thus, this Court finds that the Debtor had ample motive to conceal the fact that it had discovered Torres' LinkedIn profile at the time the Debtor filed the Motion to Dismiss: the Debtor had too much to gain in the short term by concealing its discovery of the LinkedIn profile.

For all the reasons set forth above, this Court finds that all of the elements of judicial estoppel are satisfied. Accordingly, the Debtor is estopped from now taking the position that the Settlement Agreement should be voided and that the Debtor should be allowed to prosecute the claims against the Defendants set forth in the Amended Complaint.

### G. Even if Judicial Estoppel Does Not Apply, the Motion Should Be Denied Because the Debtor Did Not Meet Its Burden by Clear and Convincing Evidence

"A party making a Rule 60(b)(3) motion must establish (1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case." *Hesling*, 396 F.3d at 641. To be successful on a Rule 60(b)(3) motion, the movant must prove the misconduct by clear and convincing evidence. *Id.*; *Rozier*, 573 F.2d at 1339. Clear and convincing evidence is:

> [T]hat weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.

*In re Charles*, 332 B.R. 538, 542 (Bankr. S.D. Tex. 2005) (quoting *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004)).

Here, the Debtor has not met its burden by clear and convincing evidence that the Defendants engaged in fraud or other misconduct. If the Debtor had to prove only Torres' misconduct by a simple preponderance of the evidence, the Court believes that it would have met its burden in that instance.[25] However, that is not the standard that governs here and the Court finds that the Debtor has not met the clear and convincing standard for several reasons. First, the Debtor should have called Torres to testify about the LinkedIn profile, as the mere introduction of this profile does not in and of itself rise to the level of constituting clear and convincing evidence.[26]

---

[25] There is no question that the Debtor did not prove any fraud or misconduct by the other two Defendants (i.e., Romo and Momentum Staffing) by either a preponderance of the evidence standard or by clear and convincing evidence.

[26] In fact, the Court gave counsel for the Debtor this very opportunity. After Patterson finished testifying at the Hearing, the Court requested Baker to call his next witness and Baker responded as follows:

> Mr. Baker:    Your Honor, I do not have any more witnesses. I will inform the Court that I had tried to subpoena for appearances today Sylvia Romo, Sarah Romo [Torres], and then another person that works there, Nellie Moreno. And the process server was unable to serve the three of them.
> . . .

Torres needed to be asked, under oath, questions related to her LinkedIn profile.   One of the following scenarios would necessarily have occurred:  (1) Torres would have had to concede that she perjured herself to this Court at the hearings on April 27 and May 3, 2017, and admit that she was in fact the president and CEO of Momentum Staffing in 2016; (2) she would have had to invoke the Fifth Amendment and therefore decline to answer questions posed to her; or (3) she would have had to otherwise explain the contents of her LinkedIn profile and convince this Court that she had not committed perjury.   Second, Torres' mother, Romo, should have been called to testify as well.   Romo should have been asked under oath whether Torres has been president and/or CEO of Momentum Staffing since May of 2016, and whether Torres has been running Momentum Staffing.   Third, in order to meet the clear and convincing standard, the Debtor should have considered calling clients of Momentum Staffing and questioned whether they had ever worked with Torres in May through November of 2016 in her capacity as president and CEO.   Although the Debtor was given ample opportunity to prove its case by doing the above, it chose not to do

---

| The Court: | Mr. Baker, do you want to continue the hearing to have the opportunity to examine Ms. Romo-Torres? |
| --- | --- |
| Mr. Baker: | Your Honor, based upon what we've got in the record right now, I think we've shown and demonstrated enough proof to get relief. There is, I think, perjury and there are several cases I can bring the Court's attention of.  The demonstration of perjury is a fraud on the Court that is a basis for setting aside a judgment. |
| The Court: | Okay.  Well, yeah, I just want to make sure here.  Let me – my question, okay, let me put the question this way.  I'll give you an option.  Do you want to stop and say that you are done in your case-in-chief or do you want me to issue an order requiring any persons to come and give testimony that you've tried to subpoena and keep the Record open and continue?  Or do you want me to take a break and you can visit with Mr. Patterson, I mean? |
| Mr. Baker: | We'll stand on the Record. |

[Adv. Doc. No. 131, Feb. 6, 2019, Hrg. Tr. 80:2-7, 80:19–81:12].

35

so.[27]  Thus, this Court finds that the Debtor has not met its burden of proving any misconduct of the Defendants by clear and convincing evidence.

Additionally, even if the Debtor had established by clear and convincing evidence that any of the Defendants had engaged in fraud or other misconduct, the Debtor has failed to show that such fraud or misconduct prevented the Debtor from fully and fairly presenting its case (i.e., from fully and fairly prosecuting the claims in the Amended Complaint).  Although it is true that at the point in time the Debtor was negotiating the Settlement Agreement with the Defendants (i.e., in March of 2018), the Debtor was not aware of the representations in Torres' LinkedIn profile, the Debtor discovered shortly thereafter—during the first week of April of 2018—that Torres' LinkedIn profile was representing that Torres has held the roles of president and CEO of Momentum Staffing since May of 2016.  At this point, the Debtor could have informed the Court and requested that it vacate its order approving the Settlement Agreement and also vacate its order dismissing the adversary proceeding.  However, instead of immediately informing the Court of Torres' LinkedIn profile, the Debtor chose to sit on this information for seven and a half months, until November of 2018, when it then filed the Motion informing this Court of the LinkedIn profile and of its wish to undo the Settlement Agreement.  Under these circumstances, the Debtor cannot say that the alleged misconduct of Torres prevented the Debtor from fully and fairly prosecuting the claims set forth in the Amended Complaint.  Indeed, Patterson testified that there were several reasons that the Debtor settled, and that the Debtor's belief that it could not prove Torres' misconduct was only one of these reasons.  He also testified that the Debtor settled because:  (1) the prosecution of the lawsuit to conclusion was going to be very costly; (2) even if the Debtor

---

[27] There is no question that Torres and Romo were "available" witnesses who could have come to court and provided testimony.  Further, several of the Debtor's clients are in the Houston area, and therefore they also were "available" for testimony.

recovered a judgment, the Defendants were probably judgment proof; and (3) the Debtor needed cash infusions quickly for its business, and the Settlement Agreement generated such funds for the immediate future. [Finding of Fact No. 23]. Stated differently, the Debtor really settled for purely economic reasons: it needed cash quickly and it believed firmly that the Defendants were judgment proof; moreover, and just as important as the infusion of cash, the Debtor was able to prevent Momentum Staffing from competing for business as a result of obtaining the Settlement Agreement. Such circumstances undermine the Debtor's position now that Torres' misconduct prevented it from fully and fairly prosecuting this adversary proceeding.

## V.   CONCLUSION

The dispute at bar underscores the maxim that "two wrongs don't make a right." Here, Torres lied under oath at the hearing on April 27, 2017, but then came back in May of 2017 to "come clean" and speak the truth, the whole truth, and nothing but the truth. But, as her LinkedIn profile suggests, it seems—at least by a preponderance of the evidence—that she did not come totally clean on the issue of who Momentum Staffing's officers were. Her conduct has therefore apparently been wrong.

However, the Debtor's actions have also been wrong. Even though it learned about the LinkedIn profile during the first week of April of 2018—i.e., even before this Court signed the joint stipulation of dismissal in the adversary proceeding and the order dismissing the Main Case, [*see* Finding of Fact Nos. 15, 18]—the Debtor deliberately held off on informing this Court about the representations made in the LinkedIn profile that Torres has been president and CEO of Momentum Staffing since May of 2016. Instead, the Debtor accepted the benefits of the Settlement Agreement—including cash payments that the Debtor desperately needed to fund its operations and the non-compete provision that allowed the Debtor unfettered access to 20 clients

37

and prospective clients without any competition from Momentum Staffing—and told the Court that it had resolved all issues with the Defendants.  [*See* Finding of Fact No. 17].  Only when it was in the Debtor's economic interest seven months later did it file the Motion informing this Court that Torres' LinkedIn profile contradicted her testimony from 2017, and begin complaining that it would never have settled if it had known about this LinkedIn profile during settlement negotiations.  The Debtor's position now is hard to swallow, and this Court—exercising its discretion—will not do so.  *Diaz v. Methodist Hosp.*, 46 F.3d 492, 496 (5th Cir. 1995) ("The decision to relieve a party from final judgment is within the sound discretion of the trial court.").

Rather, the Court finds that the Motion was not timely filed as required under Rule 60(c).  Alternatively, even if the Motion was timely filed, the Court finds that the Debtor is judicially estopped from now taking the position that it wants to prosecute the claims set forth in the Amended Complaint when previously it represented to this Court in the Motion to Dismiss that it had resolved all claims with the Defendants.  Finally, in the alternative, even if the Motion was timely filed and judicial estoppel does not apply, the Court finds that the Debtor has failed to prove by clear and convincing evidence that the Defendants engaged in fraud or other misconduct and that this fraud or misconduct prevented the Debtor from fully and fairly prosecuting the claims set forth in the Amended Complaint.  Stated differently, the Settlement Agreement and the corresponding orders approving the Motion to Compromise and dismissing the adversary proceeding were not unfairly obtained.

An order denying the Motion will be entered simultaneously herewith.

Signed on this 8th day of April, 2019.

Jeff Bohm
United States Bankruptcy Judge

38